IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

JUL - 7 2015

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

| | | |
|---|---|---|
| SHELITA ANN PILLARD, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 4:14-CV-384-A |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

FINDINGS AND CONCLUSIONS

I.    STATEMENT OF THE CASE

Plaintiff Shelita Ann Pillard ("Pillard") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for widow's insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Pillard applied for widow's insurance benefits on September 7, 2010 and protectively applied for SSI on August 31, 2010, alleging her disability began on October 28, 2008. (Transcript ("Tr.") Tr. 19, 134–45.)   After her applications for benefits were denied both initially and on reconsideration, Pillard requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 19, 65–74, 79–88.) The ALJ held a hearing on October 10, 2012, and he issued an unfavorable

decision on November 26, 2012. (Tr. 19–27, 33–60.) On March 6, 2014, the Appeals Council denied Pillard's request for review, leaving the ALJ's decision as the final decision of the Commissioner of her case. (Tr. 6–12.) Pillard subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability widow's insurance benefits are governed by Title II, 42 U.S.C. § 401 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.* of the SSA. In addition, numerous regulatory provisions govern widow's insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disabled widow's insurance benefits); 20 C.F.R. Pt. 416 (SSI). To be eligible for disabled widow's insurance benefits, a claimant must establish, as relevant here, the following: (1) she is not married; (2) she is between 50 and 60 years old; (3) her spouse died while fully insured; and (4) she has a physical or mental impairment or impairments that, under the regulations, are deemed to be so severe as to preclude her from engaging in any substantial gainful activity. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. *See, e.g., Pickney v. Shalala*, No. 1:93-CV-325, 1995 WL 137047, at *2–3 (E.D. Tex. Mar. 23, 1995). To be eligible for SSI benefits, a claimant must be disabled and must have sufficiently limited income and resources. 42 U.S.C. §§ 1382(a), 1382c.

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial or gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §

416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).   Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to the claimant's past relevant work.  *Id.* § 416.920(e).  Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Id.* §§ 416.920(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show she is disabled.  *Crowley*, 197 F.3d at 198.   If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla of evidence, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the

record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

### III.   ISSUES

In her brief, Pillard presents, in essence, the following three issues:

A.  Whether the ALJ breached his duty to develop the record by failing to order an updated consultative examination or another medical opinion regarding Pillard's ability to stand and walk as required under the RFC for light work;

B.  Whether the ALJ's credibility findings are supported by substantial evidence; and

C.  Whether the ALJ's Step Four determination is supported by substantial evidence because the ALJ relied on vocational expert ("VE") testimony in response to an incomplete hypothetical question.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 13–19.)

### IV.   ADMINISTRATIVE RECORD

In his November 26, 2012 decision, the ALJ found that Pillard had attained the age of 50 and was the unmarried widow of a deceased insured worker. (Tr. 21.) The ALJ further found that Pillard had not engaged in substantial gainful activity since October 28, 2008. (Tr. 21.) At Step Two of his analysis, the ALJ opined that the medical evidence of record established that Pillard had the following severe impairments: "congestive heart failure, hypertension, dyslipidemia, spondylosis and degenerative disc disease of the cervical and lumbar spine, obesity, obstructive sleep apnea, full thickness tear of the anterior cruciate ligament in the left knee, and patellofemoral chondromalacia in the right knee." (Tr. 21–22.) At Step Three, the ALJ found that Pillard did not suffer from an impairment or combination of impairments that

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

met or equaled the severity of the impairments in the Listing.  (Tr. 22.)  At Step Four, as to

Pillard's RFC, the ALJ stated:

> After careful consideration of the entire record, [I find] that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except the claimant is limited to occasional balancing
> and stooping; no crouching, crawling, kneeling; occasional climbing of ramps and
> stairs, but no climbing of ropes, ladders, and scaffolds.  Due to psychologically
> based factors, the claimant has some limitations but is able to understand,
> remember, and carry out detailed instructions, sustain concentration and
> persistence for extended periods, interact appropriately with supervisors,
> coworkers, and the public, and adapt to changes in a workplace setting.

(Tr. 22.)

Based on her RFC assessment, the ALJ opined that Pillard was able to perform her past

relevant work.  (Tr. 26.)  Specifically, the ALJ, relying upon the testimony from the VE,

determined that Pillard could perform her past relevant work as a security guard because it did

"not require the performance of work-related activities precluded by [Plaintiff's] residual

functional capacity."  (Tr. 26 (emphasis omitted).)  Consequently, the ALJ concluded that Pillard

was not disabled.  (Tr. 26.)

## V.   DISCUSSION

### A.  Duty to Develop the Record

Pillard claims, in essence, that the ALJ breached his duty to develop the record by

neglecting to order an updated or new consultative examination regarding the effects of Pillard's

knee injuries on her ability to perform light work.  (Pl's Br. at 13–16.)  Pillard argues that, in

making his RFC determination, the ALJ improperly relied on his lay interpretation of the record,

which was derived from the opinions of State Agency Medical Consultants Roberta Herman,

M.D. ("SAMC Herman"), and Scott Spoor, M.D. ("SAMC Spoor").  (Pl.'s Br. 13–14, citing Tr.

780–86, 997.)  Pillard maintains that, since neither of these doctors had access to records from

Texas Orthopedic Specialists showing problems in both of Pillard's knees, "the ALJ should have obtained an updated medical opinion based upon a consultative examination, recontacted a treating physician at Texas Orthopedic Specialists, or obtained an opinion from a State agency medical doctor who completely reviewed all of the medical evidence, including Plaintiff's knee impairments." (Pl.'s Br. at 14–15.) Pillard contends that a consultative examination would be "preferential" because it would give an examiner the opportunity to consider Pillard's file and conduct an examination before rendering an opinion on Pillard's residual functional capacity. (Pl.'s Br. at 16.) Pillard argues:

> [W]hat is clear is that the record needs further development for a medical opinion as to Plaintiff's functional limitations given her significant knee impairments.
>
> Here, given Plaintiff's significant knee problems and her testimony [that] she has difficulty walking, the ALJ's finding that Plaintiff can perform light work which requires standing and walking six hours in an eight hour workday is not realistic.   Further, an updated medical opinion that considered Plaintiff's significant knee impairments may have even reduced Plaintiff's standing and walking capabilities below that required at the sedentary level of work.

(Pl.'s Br. at 16 (citations omitted).)

The Commissioner, however, maintains that the ALJ did not rely on his own lay interpretations of the medical evidence but, instead, determined Pillard's RFC by considering medical assessments of Pillard's conditions along with statements made by Pillard, her physicians, and others describing the limits on Pillard's ability to do work. (Def.'s Br. at 3, citing *Hollis v. Bowen*, 837 F.2d at 1386–87.) Moreover, the Commissioner argues that not only does sufficient evidence support the ALJ's RFC determination but that the ALJ even cited the very evidence that Pillard contends necessitates further development of the record. (Def.'s Br. at 4–6; *see* Tr. 25.) The Commissioner points out that, in support of his finding that Pillard could perform some light work, the ALJ discussed and cited evidence, including evidence of Pillard's

6

(1) knee pain; (2) difficulty in climbing stairs and getting in and out of cars; (3) full range of motion in the knees without instability; and (4) damage to both knees that was treated conservatively (*Id.*; *see* Tr. 25, 765, 776, 958, 966, 979–80, 1007, 1013, 1014, 1020.)

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision, and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220).

Regarding Pillard's knee impairments, the ALJ noted:

> The claimant was also referred to Dr. Oscar Taunton, Jr., M.D. [of Texas Orthopedic Specialists], in November 2010 for left knee pain. The claimant reported difficulty with climbing stairs, getting in and out of a car, and arising from the commode. On physical examination, she showed full physiologic motion in the knee with no varus or valgus instability. An MRI showed no degenerative changes at the anterior horn of the lateral meniscus and possible degenerative changes along the articular surface, for which Dr. Taunton recommended only conservative treatment with medication and injections. After a subsequent MRI showed an acute full thickness anterior cruciate ligament (ACL) tear, Dr. Taunton recommended a fitting for an ACL knee brace and physical therapy. On follow-up, the claimant reported feeling much stronger with increased range of motion and greater stability. Overall, she was satisfied with the condition of her left knee but began to have complaints with her right knee. An MRI taken in May 2011 of the right knee showed patellofemoral chondral changes with diffuse degenerative changes, indicating patellofemoral syndrome and patellofemoral chondromalacia. The claimant underwent a series of three

injections in August and September of 2011 for her right knee. Although the claimant reported no relief with the injections, she was advised to undergo further conservative management with continuation of home exercises.

(Tr. 25 (citations omitted).)

Based, *inter alia*, on the foregoing, the Court finds that, even without an updated consultative examination or additional medical opinion, the ALJ had before him sufficient evidence regarding Pillard's knee injuries to make an informed decision. The ALJ clearly had before him adequate information about the diagnosis of knee problems from Texas Orthopedic Specialists when the ALJ made his decision. Furthermore, despite subjective evidence of Pillard's pain, the ALJ noted that the orthopedic doctors responded twice by prescribing only "conservative treatment" for the knee injuries. (Tr. 25; *see* Tr. 776, 1113.)

Moreover, the ALJ did not ignore Pillard's knee problems when evaluating the opinion evidence in the record, and he even applied "greater postural limitations" than recommended by the medical sources. (Tr. 26.) Contrary to Pillard's assertions, the record contains substantial evidence supporting the ALJ's RFC determination. Furthermore, even assuming that the ALJ had a duty to further develop the record, Pillard has failed to demonstrate that she was prejudiced by the ALJ's failure to do so. Despite Pillard's complaint that expecting her to stand six hours per day "is not realistic," she presents no evidence that she would or could have adduced evidence that would have altered the ALJ's decision beyond her own speculation that "an updated medical opinion that considered Plaintiff's significant knee impairments *may have* even reduced Plaintiff's standing and walking capabilities." (Pl.'s Br. at 16 (emphasis added).) Additionally, the ALJ made clear that he was aware of the limitations created by Pillard's knee problems and took these limitations into consideration when making his RFC determination.

Consequently, the Court concludes that the ALJ did not err in failing to obtain an updated consultative examination or an additional medical opinion.

## B. **Credibility**

Pillard also argues that the ALJ's evaluation of Pillard's credibility was flawed because it was unsupported by substantial evidence. (Pl.'s Br. at 17–18.)  First, she complains that, in consideration of her obesity, the ALJ overlooked evidence of Pillard's efforts to lose weight and the ALJ made an "outright inconsiderate" comment by stating Pillard had not sufficiently attempted to lose weight through a diet and exercise program, as recommended by her doctors. (Pl.'s Br. at 17, citing Tr. 322–38 (showing treatment for weight loss between May and July of 2009).)  Second, Pillard contends that the ALJ's determination that she is able to perform "regular competitive work" is inconsistent with her statements about her ability to complete daily activities.  (Pl.'s Br. at 17–18, citing Tr. 25.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 416.929; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  Once an impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities.  20 C.F.R. § 416.929(c); SSR 96-7p, 1996 WL 374186, at *1.  A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but they must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A).  A claimant's testimony must be consistent with the objective medical evidence and other available evidence.  20 C.F.R. § 416.929.

9

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995). When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations, and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 96-7p, 1996 WL 374186, at *3. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In evaluating Pillard's credibility, the ALJ stated:

> In considering claimant's symptoms, the [ALJ] must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

10

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record.

. . . .

After careful consideration of the evidence, [I find] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

(Tr. 23, 26.)

Furthermore, the ALJ acknowledged Pillard's obesity, noting her weight of 201 pounds and height of five feet, two inches. (Tr. 23.) Regarding the effects of Pillard's obesity on her RFC determination, the ALJ noted that despite her obesity Pillard was nevertheless "capable of light work with certain postural restrictions." (Tr. 25; *see* Tr. 690.) The ALJ observed that there was "no evidence that other disease complications from obesity such as her hypertension and high cholesterol have contributed to significant work-related limitations of function, given evidence of adequate control with medication." (Tr. 25; *see* Tr. 1224.) Additionally, despite Pillard having been diagnosed with sleep apnea, the ALJ noted that she (1) used a CPAP machine, (2) was "still able to perform certain chores as part of her daily activities," and (3) was able to pay attention for hours at a time while following oral and written instructions. (Tr. 25; *see* Tr. 181, 603–619.) Furthermore, citing doctor notes from October 2009, August 2010, and October 2010 (Tr. 527, 623, 689), the ALJ found that Pillard's sustained obesity indicated that she had not "sufficiently pursued weight loss through diet and exercise" despite her doctors'

11

advice. (Tr. 25.)  In conclusion, the ALJ found that, while Pillard's obesity "may contribute to some limitations of function," it was insufficient to render her disabled. (Tr. 25.)

In addition, the ALJ discussed Pillard's complaints regarding the debilitating effects that her other medical conditions had on her ability to work, stating:

> The claimant testified that she is unable to work due to pain in the back, neck, arthritis in both knees, tendonitis in the hands, elevated blood pressure, congestive heart failure, obstructive sleep apnea, and foot pain. . . . She lives alone and does light cleaning only. She cannot sweep or vacuum. She can shop for groceries occasionally and has a friend cook for her. She has to lie down frequently with her feet elevated and cannot drive as much. She wears a brace on her left knee due to a torn anterior cruciate ligament. She has trouble opening jars and bottles due to tendonitis in her hands. She experiences side effects from medication, including drowsiness and dizziness, which make it even harder for her to drive.

(Tr. 23.)  From there, the ALJ examined Pillard's complaints in light of medical evidence on each of the complained conditions. (Tr. 23–25.)  The ALJ first considered the medical evidence regarding Pillard's "alleged congestive heart failure." (Tr. 23–24.)  The ALJ noted that Pillard's heart "condition has been relatively stable with few clinical findings." (Tr. 23.)  The ALJ further stated that when Pillard was treated at Harris Methodist Hospital in March 2008 for chest pain, records indicated that she showed "no evidence of acute coronary syndrome." (Tr. 23; *see* Tr. 294.)  Though Harris Methodist diagnosed her with congestive heart failure in October 2008 (Tr. 23; *see* Tr. 258), a test in February 2009 showed "no evidence of significant myocardial ischemia." (Tr. 23; *see* Tr. 547.)  In May 2009, Iyad Rashdan, M.D. ("Dr. Rashdan"), of HeartPlace observed no clinical signs of congestive heart failure and opined that Pillard's complained shortness of breath was "more likely due to physical deconditioning or obesity." (Tr. 23–24; *see* Tr. 532.)  Finally, in June 2012, "Dr. Rashdan observed no overt signs of congestive heart failure in the claimant's cardiac work-up." (Tr. 24; *see* Tr. 1122.)

Additionally, the ALJ found that the medical evidence showed that Pillard's "disabling pain in the back, neck, and knees do not appear as severe as alleged." (Tr. 24.) As to her neck and back pain, the ALJ noted, *inter alia*, that when Heather Blackburn, M.D. ("Dr. Blackburn") from Spine Team of Texas saw Pillard in June 2009 for pain after she fell at a grocery store, Dr. Blackburn (1) noted that Pillard's pain was being treated by chiropractic care and medicine, (2) diagnosed her with spondylosis and degenerative disc disease, and (3) prescribed physical therapy and a steroid for her spine pain. (Tr. 24; *see* Tr. 356–58.) The ALJ also referenced a letter from Pillard's chiropractor discharging her from care in October 2009 that stated she "showed good response to chiropractic care, [and] report[ed] relief from many of her original symptoms." (Tr. 24; *see* Tr. 569–71.) The ALJ further stated that, "[d]espite her symptoms, [Pillard] was independent in activities of daily living without the use of any assistive device." (Tr. 24.)

Regarding Pillard's knee pain, the ALJ first noted that testing showed her to have various maladies in her left knee, including a tear of the ACL. (Tr. 25; *see* Tr. 979–83.) However, as set forth above, the ALJ noted, doctors only prescribed a "conservative treatment" of medication, injections, a knee brace, and physical therapy for Pillard's left knee conditions. (Tr. 25; *see* Tr. 774–76, 979–80.) Additionally, after tests showed problems affecting her right knee, the ALJ remarked that doctors prescribed a series of injections and, when those reportedly provided no relief, the doctor prescribed "further conservative management." (Tr. 25; *see* Tr. 958, 966, 1113.) In consideration of this evidence, the ALJ noted:

> In addition to the lack of significant objective findings and the conservative course of treatment that has been consistently recommended by her doctors, the claimant's reported activities of daily living give further indication that the claimant's impairments, while severe, would not prevent the claimant from performing regular, competitive work activity. Although the claimant reports to be significantly limited by pain and shortness of breath, she is able to

drive, shop in stores, do the laundry, prepare light meals, and enjoy many sedentary activities, such as talking on the phone or visiting family and friends, and can walk up to ½ a mile before needing to rest.

(Tr. 25; *see* Tr. 176–83.)

Based on the foregoing, it is clear in this case that substantial evidence supports the ALJ's findings on Pillard's credibility. As to her obesity, Pillard does not raise a legal argument showing how the ALJ's credibility determination lacks the support of substantial evidence. Instead, she merely complains that the ALJ made an inconsiderate statement that ran contrary to evidence showing that Pillard attempted to lose weight through a cardiac rehabilitation program. Nonetheless, the ALJ's credibility determination in relation to Pillard's obesity was supported by substantial evidence. The ALJ considered the record of Pillard's obesity and even found her to suffer from a severe impairment because of it. Moreover, in weighing the limitations caused by her obesity, the ALJ considered evidence of obesity's effects on Pillard's condition, including her hypertension, cholesterol, and sleep apnea, before determining that obesity did not render her disabled. While she complains that the ALJ made an "inconsiderate" statement by claiming Pillard had not sufficiently pursued a diet and exercise program, even this comment was supported by three doctor notes—each dated after Pillard completed the cardiac rehabilitation program—citing Pillard's deconditioning and need to pursue a low-fat diet. In sum, the ALJ's credibility determination regarding Pillard's obesity is supported by substantial evidence.

Furthermore, Pillard's complaint is unavailing that the ALJ erred by overlooking her reported difficulty in performing tasks of daily living when determining that she could perform "regular, competitive work activity." First, an ALJ may consider the claimant's daily activities when deciding the claimant's disability status. *See Leggett*, 67 F.3d at 565 n.12; *Copenhaver v. Astrue*, No. A-09-CA-838-SS, 2011 WL 891617, at *12 (W.D. Tex. Mar. 11, 2011)

14

("Specifically, inconsistencies between a claimant's testimony about her limitations and her daily activities may be quite relevant in evaluating credibility.")  Second, the ALJ did not discount all of Pillard's statements about her limitations.  Instead, the ALJ only discounted her subjective complaints and credibility to the extent they were inconsistent with the ALJ's RFC determination.  In this case, the ALJ considered Pillard's descriptions of her limitations in daily activities in light of evidence, *inter alia*, of doctor statements regarding her limitations and the conservative courses of treatment prescribed for her ailments.

Moreover, even if the ALJ erred in failing to properly consider evidence of Pillard's (1) attempts to lose weight through diet and exercise and (2) difficulty in performing daily tasks, substantial evidence supports the ALJ's finding on Pillard's credibility.  Because substantial evidence supports this finding, any error relating to the ALJ's failure to properly consider evidence supporting Pillard's credibility would be harmless error.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1998); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (stating that in the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error); *Franks v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (applying harmless error analysis to an ALJ's credibility determination).  In summary, the ALJ's credibility determination was supported by substantial evidence.

## C. Incomplete Hypothetical

Finally, Pillard argues that the ALJ's Step Four determination is unsupported by substantial evidence because the ALJ used an incomplete hypothetical question to elicit the VE's testimony, upon which the ALJ relied.  (Pl.'s Br. at 18.)  Pillard argues that the hypothetical question was incomplete since the ALJ made errors in determining Pillard's RFC, as discussed

above, as there was "no medical opinion evidence" accounting for her knee impairments and in evaluating her credibility. (*Id.* at 19.) Because of this incomplete hypothetical, Pillard argues that the case should be remanded for a *de novo* hearing and decision. (*Id.*)

A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir.1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). The hypothetical question posed to the VE must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

During the hearing the ALJ asked the VE to consider several hypothetical questions. Ultimately, the ALJ relied on the testimony of the VE in response to a hypothetical question that matched the RFC determination set forth above. (*See* Tr. 53–55.) Pillard's argument that the hypothetical question is defective "due to the ALJ's errors in evaluating Plaintiff's RFC and credibility" fails as Pillard does not introduce new evidence in support of this claim but, instead, apparently relies upon her other unpersuasive arguments discussed above. In addition, in the hypothetical question posed to the VE relied on by the ALJ in making his decision, the ALJ properly incorporated all the functional limitations that he found in his RFC assessment. (*Compare* Tr. 22 *with* Tr. 53–55.) Because the ALJ properly incorporated all the functional limitations from his RFC assessment into the hypothetical question, the Court finds that the ALJ did not present a defective hypothetical to the VE.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute* 28 U.S.C. § 636(b)(1) (extending the deadline to file objections from ten to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 21, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is **RETURNED** to the docket of the United States District Judge.

SIGNED July 7, 2015.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE